## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **STALWART PLASTICS, INC.,** | : | **Chapter 11 Case No. 24-40194-JTL** |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| **STALWART PLASTICS, INC.,** | : | |
| | : | |
| Movant, | : | **Contested Matter** |
| | : | |
| vs. | : | |
| | : | |
| **TRUIST BANK and TRUIST EQUIPMENT** | : | |
| **FINANCE CORP.,** | : | |
| | : | |
| Respondents. | : | |
| | : | |

**MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE; (B) REQUESTING AN EXPEDITED INTERIM HEARING THEREON; AND (C) SCHEDULING A FINAL HEARING ON THE VALUATION AND USE OF CASH COLLATERAL**

Stalwart Plastics, Inc. ("**Stalwart**" or "**Debtor**"), Debtor and Debtor-in-Possession in this Chapter 11 bankruptcy case, files this motion seeking interim and final orders valuing and authorizing Debtor to use cash collateral upon a showing of adequate protection, as necessary, to creditors with alleged interests therein ("**Motion**"), and respectfully shows:

### Preliminary Statement

1.      Stalwart, a Nevada corporation, manufactures stretch plastic film at its plant located at 7701 Chattsworth Road, Midland, Georgia (the "**Business**"). While its operation is

based in Georgia, certain of its principals, including Angie Valero (the Debtor's Chief Financial Officer), reside in or about Phoenix, Arizona.

2.      Without the use of cash collateral, the Debtor will be unable to manage and pay the expenses required for the continued operation of its business. Therefore, the Debtor is requesting interim and final orders authorizing the use of cash collateral in accordance with the proposed budget attached as **Exhibit A** (the "**Budget**").

3.      Accordingly, the Debtor moves for the entry of an order pursuant to Sections 361, 362, 363, and 552 of the Bankruptcy Code (the "**Interim Cash Collateral Order**"): (A) authorizing its use of cash collateral on an *interim* basis as described in more detail below and (B) scheduling a final hearing to consider valuation and the Debtor's use of cash collateral (the "**Final Cash Collateral Hearing**") and the entry of a final order authorizing the use of cash collateral on a permanent basis  (the "**Final Cash Collateral Order**").

## Background

4.      On March 29, 2024 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.      The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.      No creditor's committee has been appointed. No trustee or examiner has been appointed.

7.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Sections 361, 362, 363, 506, and 552 of the Bankruptcy Code.

8.      Respondent Truist Bank ("**Truist**") may be served at Truist Bank, c/o Lisa Allen, SVP, 2520 Northwinds Parkway - Suite 400, Alpharetta, Georgia 30009. And under these emergency circumstances, Truist may be served through its counsel via email at Darryl S. Laddin (darryl.laddin@agg.com) and Sean Kulka (sean.kulka@agg.com).

9.      Respondent Truist Equipment Finance Corp. ("**TEFC**") may be served at Truist Equipment Finance Corp., c/o Lisa Allen, SVP, 2520 Northwinds Parkway - Suite 400, Alpharetta, Georgia 30009. And under these emergency circumstances, TEFC may be served through its counsel via email at Darryl S. Laddin (darryl.laddin@agg.com) and Sean Kulka (sean.kulka@agg.com).

10.     On information and belief, Respondents allege that their respective claims against the Debtor are secured by, among other things, "cash collateral" in the form of accounts, inventory, raw materials, component parts, work in process, and/or materials utilized in the Business (collectively, "**Cash Collateral**"). Subject to further investigation, and without waiving its right to argue or establish otherwise, Debtor states that Respondents appear to have a first and second priority security interest in Debtor's Cash Collateral, at the exclusion of all other creditors who might claim an interest in Cash Collateral.

11.     All of the collateral allegedly securing Debtor's obligations to Respondents is now property of Debtor's Bankruptcy Estate as provided by 11 U.S.C. § 541, and subject to the exclusive jurisdiction of this Court.

**Relief Requested and Basis for Relief**

12.     As noted above, by this Motion, the Debtor respectfully requests entry of an interim order pursuant to Sections 361, 362, 363, 506, and 552 of the Bankruptcy Code (A) authorizing its use of Cash Collateral on an interim basis and (B) scheduling the Final Cash

Collateral Hearing to consider the entry of a final order valuing Respondents' collateral as provided under 11 U.S.C. § 506 and authorizing the Debtor's permanent use of such Cash Collateral.

13.     As more particularly described below, the Debtor requires the immediate use of Cash Collateral, wherever located, to continue operations and preserve the value of its assets. Specifically, the Debtor seeks to use Cash Collateral to (a) maintain its operations and (b) to pay disbursements more fully described in the Budget and such other disbursements that fall in the category of essential estate preservation costs under § 506(c). The Budget, which the Debtor prepared on an emergency basis, reflects the Debtor's best projection of revenues and expenses for the first thirteen weeks or so of the Bankruptcy Case. The Debtor reserves the right to amend the Budget up to the time of any hearing on the Motion, including any Preliminary and Final Hearing on the Motion.

14.     The Debtor requires the use of its accounts receivable, which receivables may constitute Respondents' Cash Collateral. Absent the use of Cash Collateral, the Debtor will be unable to carry on the operation of its business as a going concern. In the absence of the use of Cash Collateral, the continued operation of the Debtor's business, even for a limited period of time, would not be possible, and serious and irreparable harm to Debtor and its estate would occur. The use of Cash Collateral is critical to preserve and maintain the going concern value of Debtor.

15.     The Debtor has not been able, at this early stage in the case, to obtain consent for the use of Cash Collateral on terms and conditions which Debtor, in its sound business judgment, deems in the best interest of its estate and creditors. If, following the filing of this Motion, the

Debtor is unable to reach consensual agreements regarding use of Cash Collateral, then the

Debtor will request permanent use of Cash Collateral at the Final Cash Collateral Hearing.

**1.      Section 363(c)(2) Authorizes the Debtor's Use of Cash Collateral.**

16.      Section 363 of the Bankruptcy Code governs the Debtor's use of cash collateral.

Under Section 363(c)(2), a Debtor may not use cash collateral unless "(A) each entity that has an

interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes

the use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

Section 363(a) defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or
> other cash equivalents whenever acquired in which the estate and an entity other
> than the estate have an interest and includes the proceeds, products, offspring, rents,
> or profits of property . . . , whether existing before or after the commencement of a
> case under this title.

11 U.S.C. § 363(a).

17.      A debtor's cash "is the life's blood of the business," and the bankruptcy court

must ensure that such life's blood "is available for use, even if to a limited extent." *In re Mickler*,

9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). A debtor may use cash collateral to continue its

operations so long as the interests asserted by affected creditors in such cash are adequately

protected. Thus, courts must balance the protection that a debtor seeks to provide with the

debtor's need to use cash in its reorganization effort. *Stein v. U.S. Farmers Home Admin. (In re

Stein)*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). In ruling on whether a creditor is adequately

protected early in a case, courts "will generally permit the business operation to continue, at least

to the point of plan formulation, if the debtors make a solid evidentiary showing to support their

projections[.]" *In re Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

18.     Consistent with these requirements, courts repeatedly have recognized that use of

cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and,

thus, maximize the value of an estate for all interested parties. *See, e.g.*, *Dynaco*, 162 B.R. at 394

(granting a motion for the use of cash collateral and stating that "the purpose of Chapter 11 is to

rehabilitate debtors and generally access to cash collateral is necessary in order to operate a

business"); *Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (George

Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1020 (11th Cir. 1984) (allowing debtor to use

cash collateral over secured creditor's objection after noting that "[w]ithout the availability of

cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional

policy favoring rehabilitation over economic failure would be frustrated."); *MBank Dallas, N.A.

v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1399 (10th Cir. 1987) (permitting debtor to use

cash collateral to expand operations after finding there was only a low risk that secured creditor's

interest would diminish); *In re Stein*, 19 B.R. at 459 (granting cash collateral motion and

declaring that access to cash is imperative for a debtor to operate its business).

19.     Pursuant to Section 552(b)(1), this Court may also permit a debtor to continue to

use cash collateral based on the "equities of the case."[1] Section 552(a) provides a general rule

that "property acquired by the estate or by the debtor after the commencement of the case is not

subject to any lien resulting from any security agreement entered into by the debtor before the

---

[1]     Section 552(b)(1) provides as follows:

Except as provided in Sections 363, 506(c),  522, 544, 545, 547, and 548 of this title, if the debtor
and an entity entered into a security agreement before the commencement of the case and if the
security interest created by such security agreement extends to property of the debtor acquired
before the commencement of the case and to proceeds, products, offspring, or profits of such
property, then such security interest extends to such proceeds, products, offspring, or profits
acquired by the estate after the commencement of the case to the extent provided by such security
agreement and by applicable nonbankruptcy law, *except to any extent that the court, after notice
and hearing and based on the equities of the case, orders otherwise*. (emphasis added).

commencement of the case." 11 U.S.C. § 552(a). However, Section 552(b)(1) creates an

exception to this general rule and preserves a creditor's lien on post-petition "proceeds, products,

offspring, or profits" of pre-petition collateral as a long as the security agreement so provides. 11

U.S.C. § 552(b)(1). However, this exception to the general is also subject to exception "to any

extent that the court, after notice and a hearing and based on the equities of the case, orders

otherwise." *Id.*

20.      The purpose of the "equities of the case" exception, is to allow a court to balance

the need to preserve a valid security interest in proceeds, while also protecting the interest of

unsecured creditors. *See, e.g. In re Photo Promotion Associates, Inc.* 61 B.R. 936, 939-40

(Bankr. S.D.N.Y. 1986); *In re Muma Servs.*, 322 B.R. 541, 558-59 (Bankr. D. Del. 2005)(J.

Walrath)(citing *Photo Promotion Associates, Inc.*);  *In re Cafeteria Operators, L.P.*, 299 B.R.

400, 409-410 (Bankr. N.D. Tex. 2003); *Bank of N. Ga. v. Strick Chex Columbus Two, LLC (In re

Strick Chex Columbus Two, LLC)*, 542 B.R. 914, 920 (Bankr. N.D. Ga. 2015, Drake, J.).

21.      For example, a debtor or other contributing party may provide value, in the form

of labor or unencumbered materials, which is used in combination with a secured creditor's

collateral to generate cash that may be considered proceeds of the secured creditor's collateral.

*See In re Cafeteria Operators, L.P.*, 299 B.R. at 409-410. To prevent a secured creditor from

receiving a windfall based on the increased collateral value, the "equities of the case" exception

allows the court to allocate the added value to the estate. *Id.; see also In re Strick Chex

Columbus Two, LLC*, 542 B.R. at 920.

22.      The Debtor's case presents the scenario where the "equities of the case" exception

is of critical importance to the ability of the Debtor to continue to operate and is crucial to the

ability of the unsecured creditors to obtain a meaningful recovery. Here, the Debtor

manufactures stretch plastic film using raw materials and other product inputs. The raw materials combined with the skilled labor of its employees and purchased materials generate a finished product that is worth substantially more than the sum of its components. Indeed, without finishing, the raw materials and inputs are worth far less than the finished product and, for some of the raw materials and inputs, worth little more than scrap value.

23.     The exception for the "equities of the case" expressly empowers this Court to balance the interests of the creditors against other interests, such as the Debtor's possible rehabilitation, the preservation of jobs, and the preservation of the going concern value of the Debtor's business. *See*, *e.g. United Virginia Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986) (Section 552(b) "gives the bankruptcy court considerable latitude"); *In re: Topgallant Group, Inc.,* 1992 WL 12004198 (Bankr. S.D. Ga. 1992). It is Debtor's post-petition labor required to finish the products that will serve to increase the value of the collateral. *See In re Cafeteria Operators, L.P.*, 299 B.R. at 410.

24.     Further, the § 552(b)(1) reference to § 506(c) further indicates that this Court has discretion to permit the limited use of cash collateral for preservation of estate assets.

**2. Debtor's Proposal for Providing Adequate Protection to Respondents.**

25.     The standards for authorizing the Debtor to use Cash Collateral are satisfied in this instance because the Debtor's ongoing business operations will generate proceeds of inventory and thereby adequately protect and preserve the value of any collateral securing Debtor's pre-petition obligations, and Respondents will be further adequately protected, to the extent that they are entitled to adequate protection, as provided below.

26.     Courts have held that secured lenders are adequately protected when cash collateral is used to pay operating expenses of a Chapter 11 debtor. For example, in *In re Stein*,

the Bankruptcy Court for the Eastern District of Pennsylvania granted a debtor's request to use

cash collateral over the secured creditor's objection. *In re Stein*, 19 B.R. at 458. In that case, the

debtor sought to use cash proceeds, from a contract with a third party, for operational costs

during the Chapter 11 case. *Id.* at 459. A secured creditor, holding liens on the debtor's collateral

and proceeds therefrom, objected to the debtor's request. *Id.* Ruling in the debtor's favor, the

court acknowledged two competing concerns: (i) "protecting the holder of a lien on cash

collateral against unrestricted use of such collateral" and (ii) "rehabilitating the chapter 11 debtor

by allowing it to use the cash collateral where necessary to operate the debtor's business." *Id.* In

weighing these two factors, the court first observed that the objecting creditor was under-

secured. *Id.* at 460. Nevertheless, the court explained that the debtor's continued operation was

the only means by which the creditor's secured position could be preserved. *Id.* A creditor is not

entitled to more protection than it received when making the loan. *Id.* The court concluded that

the facts of the case and the "[Bankruptcy] Code's policy favoring rehabilitation" allowed the

debtor to utilize the cash proceeds of its operations. *Id.*

27.    Cash is necessary for working capital and operating costs and expenses at the

outset of and during this Chapter 11 case. Debtor's ability to maintain business relationships with

its suppliers, service providers, and employees is dependent on its ability to continue to operate

the business as projected on the Budget, and Debtor cannot operate unless it can fund payments

for post-petition services and other operating expenses. Thus, use of Cash Collateral is essential

to the continued viability and the value of the business as a going concern and will enhance the

prospects for each Debtor. Furthermore, the alternative in the case is, as one court put it, "to

force the debtor[] to close down [its] operations and thus doom any effort at reorganization

which will hopefully extract the maximum value of the assets involved to the benefit of all

classes of creditors and other constituencies involved in this case." *See Dynaco Corp.*, 162 B.R.

at 396. Because this result would stand in diametrical opposition to the rehabilitative purpose of

Chapter 11, approval of this Motion is warranted. *See id.* at 394 (noting that "it is apparent that

the Congress intended business under reorganization to proceed in as normal a fashion as

possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

### 3.    Adequate Protection Proposal

28.    As noted above, a debtor's authority to use cash collateral is typically conditioned

on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. §

363(e). "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by

the implications of the examples of adequate protection listed in § 361." *In re Beker Indus.*

*Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a

non-exhaustive list of acceptable forms of adequate protection, including a cash payment or

periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of

such entity's interest in such property." 11 U.S.C. § 361.

29.    The determination of adequate protection is a "fact-specific inquiry." *In re*

*Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("Its application is left to the vagaries of

each case . . .") (citation omitted). The focus of the adequate protection requirement is to

preserve the secured creditor's position at the time of the bankruptcy filing and protect the

secured creditor from diminution in the value of its collateral during the reorganization process.

*Id.* at 288 (citation omitted); *In re Beker Indus. Corp.*, 58 B.R. at 736.  *See In re WorldCom, Inc.*,

304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the

Bankruptcy Code, which sets forth how adequate protection may be provided under section 363,

makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy.").

30.    What constitutes adequate protection must be decided on a case-by-case basis. *See*, *e.g., MBank Dallas v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) (citing *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985)); *Kimbrough Inv. Co. v. Royal d'Iberville Corp. (In re Royal d'Iberville)*, 10 B.R. 37, 39 (Bankr. S.D. Miss. 1981) ("Opinions as to what is adequate protection must be determined on a case-by-case basis and opinions will vary greatly from court-to-court because adequate protection is not defined in the Bankruptcy Code.").

31.    Importantly, the entitlement to, form of, and amount of adequate protection should be based on a showing that the adequate protection provided is calculated to offset any diminution in value of the Respondents' collateral due to its use in the Debtor's operations: "Despite its form, the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case . . . . Where a debtor desires to use cash collateral, a court must determine the value of the creditor's interest in the cash collateral and whether the debtor's proposed use of cash collateral would impair that interest and to what extent adequate protection is required." *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Col. 1995) (internal citations omitted). Moreover, courts should take equitable considerations into account in determining what constitutes adequate protection. *See Dynaco*, 162 B.R. at 394 ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code . . . and must be determined based upon equitable considerations arising from

the particular facts of each proceeding."); *Stein*, 19 B.R. at 459 ("The equities in each case must

be weighed in striking a balance.").

32.     Here, the Debtor proposes to adequately protect Respondents via the following, as

may be applicable: (a) the payment of all post-petition property taxes on any collateral held by

Respondents as and when they become due; (b) maintaining adequate insurance on Respondents'

collateral; (c) continuing to repair, and maintain and, as necessary, replace Respondents'

collateral (including machinery and equipment); (d)  provide replacement liens or adequate

protection payments to the extent such collateral is diminished by its use, and (e) operating the

business in substantial compliance with the Budget.

33.     In summary, Respondent will be adequately protected because the Debtor's use of

Cash Collateral will preserve the value of their collateral for the benefit of not only Debtor but

also of Respondents by facilitating the Debtor's financial rehabilitation through a Chapter 11

plan. If Debtor is not given access to cash, then it will undoubtedly be forced to shut down

operations and Debtor's assets would be liquidated for its raw material value. However, with the

use of Cash Collateral to conduct Debtor's business, Debtor will be able to preserve and protect

the value of its assets, including the pre-petition collateral.

**4.      Interim Approval for the Use of Cash Collateral Should Be Granted**

34.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash

collateral may not be commenced earlier than 14 days after the service of such motion. Similarly,

Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid

immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition

grant, among other things, a motion to use, sell, lease property of the debtor's estate."

35.     Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

36.     Pursuant to Bankruptcy Rules 4001(b) and 6003, the Debtor requests the Court conduct an expedited preliminary hearing on the Motion and (i) authorize Debtor to use Cash Collateral to (a) maintain and finance the ongoing operations of the Debtor and (b) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties-in- interest and (ii) schedule the Final Cash Collateral Hearing on the relief requested herein.

## Notice

37.     The Debtor will serve this Motion as directed in any Order granting an expedited hearing on the Motion.

**WHEREFORE**, the Debtor moves this Court for authority to use the Cash Collateral pursuant to the terms and conditions of the proposed Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (a proposed copy of which is attached as **Exhibit B**) and, thereafter, pursuant to the terms and conditions of a Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection. The Debtor further prays for all other legal and equitable relief to which it may be entitled.

Respectfully submitted this 1st day of April, 2024.

**STONE & BAXTER, LLP**
By:

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066
G. Daniel Taylor
Georgia Bar No. 528521
Thomas B. Norton
Georgia Bar No. 997178

577 Third Street
Macon, Georgia 31201
478.750.9898
478.750.9899 (fax)

dbury@stoneansbaxter.com
dtaylor@stoneandbaxter.com
tnorton@stoneandbaxter.com


Proposed Counsel for Debtor


G:\CLIENTS\Stalwart Plastics, Inc\Chapter 11\Expedited Hearing\Final for Upload (Emergency)\5. Motion to Use Cash Collateral.docx

**EXHIBIT A**

**Proposed Interim Budget**

(attached separately)

**Stalwart Plastics**
**Chapter 11 - Case No. 24-40194**
**13-week cash budget**

| | 4/1/2024 | 4/8/2024 | 4/15/2024 | 4/22/2024 | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 | 7/1/2024 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
| BEGINNING BALANCE \| CASH ON HAND | 8,806.06 | 77,644.70 | 193,145.49 | 200,414.67 | 387,938.63 | 442,623.28 | 555,249.40 | 56,913.08 | 153,107.20 | 178,759.84 | 222,785.97 | 113,262.48 | 161,932.77 | 125,067.41 | 8,806.06 |
| **( + ) CASH RECEIPTS** | | | | | | | | | | | | | | | |
| AR Collected | 200,000.00 | 226,748.16 | 199,368.00 | 250,179.84 | 192,000.00 | 230,400.00 | 230,400.00 | 249,600.00 | 249,600.00 | 249,600.00 | 249,600.00 | 230,400.00 | 230,400.00 | 230,400.00 | 3,218,696.00 |
| Sale of excess Scrap | 24,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | - | - | - | - | 204,000.00 |
| TOTAL CASH RECEIPTS | 224,000.00 | 246,748.16 | 219,368.00 | 270,179.84 | 212,000.00 | 250,400.00 | 250,400.00 | 269,600.00 | 269,600.00 | 269,600.00 | 249,600.00 | 230,400.00 | 230,400.00 | 230,400.00 | 3,422,696.00 |
| **DIRECT PRODUCT / SERVICE COSTS** | | | | | | | | | | | | | | | |
| Resin | | | - | | | - | 500,000.00 | 100,000.00 | 92,400.00 | 100,800.00 | 100,800.00 | 100,800.00 | 109,200.00 | 109,200.00 | 1,213,200.00 |
| Corrugated | | | 9,216.00 | 9,216.00 | 9,984.00 | 9,984.00 | 9,216.00 | 9,216.00 | 9,216.00 | 9,984.00 | 9,984.00 | 9,984.00 | 9,984.00 | 9,984.00 | 115,968.00 |
| Pallets | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 37,000.00 |
| Freights | 15,000.00 | 24,000.00 | 24,000.00 | 18,000.00 | 19,500.00 | 26,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 227,500.00 |
| SALARIES - DIRECT | 23,463.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 28,633.75 | 395,702.50 |
| Payroll Burden | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 3,626.13 | 50,765.79 |
| SUPPLIES | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 42,000.00 |
| Production Variance | | | | | | | | | | | | | | | - |
| TOTAL COST OF GOODS SOLD | 47,589.88 | 61,759.88 | 70,975.88 | 64,975.88 | 67,243.88 | 73,743.88 | 558,975.88 | 158,975.88 | 151,375.88 | 161,543.88 | 162,043.88 | 162,043.88 | 170,443.88 | 170,443.88 | 2,082,136.29 |
| **( − ) OPERATING EXPENSES** | | | | | | | | | | | | | | | |
| OTHER COST | | | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 |
| Utilities (Power) | | - | 40,362.50 | | | - | 45,000.00 | | | - | 45,000.00 | | | - | 130,362.50 |
| Utilities (Water) | | | | 400.00 | | | | 400.00 | | | | | | | 800.00 |
| Internet Wow | | | 783.13 | | | | 783.13 | | | | 783.13 | | | | 2,349.39 |
| Maintenance (Plant) | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 35,000.00 |
| Spare Parts (Machines) | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 14,000.00 |
| Fuel (Blossman Gas) | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 330.00 | 4,620.00 |
| Office Supplies | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,800.00 |
| Training | | 3,725.00 | | 3,000.00 | 2,500.00 | | | | | | 3,725.00 | | 3,000.00 | 2,500.00 | 18,450.00 |
| RENTAL FEES | - | 50,000.00 | | | | 50,000.00 | | | | 50,000.00 | | | | 50,000.00 | 200,000.00 |
| Commissions | | | 18,000.00 | | | | 30,000.00 | | | | 35,000.00 | | | | 83,000.00 |
| Travel & Expenses reimbursement | 25,000.00 | 5,000.00 | | 5,000.00 | - | 5,000.00 | 25,000.00 | 5,000.00 | - | 5,000.00 | 25,000.00 | 6,250.00 | 6,250.00 | 25,000.00 | 137,500.00 |
| Insurance | - | | 4,405.83 | | | - | 4,405.83 | | | | | 4,405.83 | | | 13,217.49 |
| SALARIES - INDIRECT | 71,905.43 | 6,732.50 | 61,905.43 | - | 61,905.43 | | 68,905.43 | - | 61,905.43 | - | 71,905.43 | - | 61,905.43 | - | 467,070.49 |
| Payroll Burden | 6,636.05 | | 6,636.05 | | 6,636.05 | | 6,636.05 | | 6,636.05 | | 6,636.05 | | 6,636.05 | | 46,452.36 |
| TOTAL OPERATING EXPENSES | 107,571.48 | 69,487.50 | 141,122.94 | 17,430.00 | 80,071.48 | 64,030.00 | 189,760.44 | 14,430.00 | 77,571.48 | 64,030.00 | 197,079.61 | 19,685.83 | 86,821.48 | 86,530.00 | 1,215,622.24 |
| **( − ) ADDITIONAL EXPENSES** | | | | | | | | | | | | | | | - |
| Personal Property Tax | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL EXPENSES | 155,161.36 | 131,247.38 | 212,098.82 | 82,405.88 | 147,315.36 | 137,773.88 | 748,736.32 | 173,405.88 | 228,947.36 | 225,573.88 | 359,123.49 | 181,729.71 | 257,265.36 | 256,973.88 | 3,297,758.53 |
| **NET CASH FLOW FROM OPERATIONS** | 68,838.64 | 115,500.78 | 7,269.18 | 187,773.96 | 64,684.64 | 112,626.12 | (498,336.32) | 96,194.12 | 40,652.64 | 44,026.12 | (109,523.49) | 48,670.29 | (26,865.36) | (26,573.88) | 124,937.47 |

**Stalwart Plastics**
**Chapter 11 - Case No. 24-40194**
**13-week cash budget**

| | 4/1/2024 | 4/8/2024 | 4/15/2024 | 4/22/2024 | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 | 7/1/2024 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
| Capital Contribution | | | | | | | | | | | | | | | - |
| Administrative Expenses and Cure cost | | | | - | - | | - | - | - | | | | | | - |
| Professional Fees | | | | | 10,000.00 | | - | | 15,000.00 | - | | | 10,000.00 | - | **35,000.00** |
| UST Fees | | - | | 250.00 | | | | | | | | | | 26,662.07 | **26,912.07** |
| Adequate Protection Payments | | | | | | | | | | | | | | | - |
| ENDING CASH POSITION | 77,644.70 | 193,145.49 | 200,414.67 | 387,938.63 | 442,623.28 | 555,249.40 | 56,913.08 | 153,107.20 | 178,759.84 | 222,785.97 | 113,262.48 | 161,932.77 | 125,067.41 | 71,831.47 | 71,831.47 |
| Ending AR | 1,156,270.64 | 1,155,387.51 | 1,182,432.15 | 1,157,648.72 | 1,211,408.72 | 1,226,000.72 | 1,221,392.72 | 1,197,200.72 | 1,173,008.72 | 1,168,016.72 | 1,163,024.72 | 1,177,616.72 | 1,192,208.72 | 1,206,800.72 | 1,206,800.72 |
| Ending Inventory (excl Scrap) | 1,574,979.80 | 1,492,739.68 | 1,419,715.56 | 1,340,691.44 | 1,251,935.31 | 1,169,679.19 | 1,084,655.07 | 999,630.95 | 1,007,006.83 | 1,012,550.70 | 1,018,594.58 | 1,024,638.46 | 1,039,082.34 | 1,053,526.22 | 1,053,526.22 |
| Total Cash Collateral | 2,808,895.15 | 2,841,272.68 | 2,802,562.38 | 2,886,278.79 | 2,905,967.31 | 2,950,929.31 | 2,362,960.87 | 2,349,938.87 | 2,358,775.39 | 2,403,353.39 | 2,294,881.78 | 2,364,187.95 | 2,356,358.47 | 2,332,158.40 | 2,332,158.40 |

**EXHIBIT B**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **STALWART PLASTICS, INC.,** | : | **Chapter 11 Case No. 24-40194-JTL** |
| | : | |
| **Debtor.** | : | |
| | : | |
| | : | |
| **STALWART PLASTICS, INC.,** | : | |
| | : | |
| **Movant,** | : | **Contested Matter** |
| | : | |
| **vs.** | : | |
| | : | |
| **TRUIST BANK and TRUIST EQUIPMENT** | : | |
| **FINANCE CORP.,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

**INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL**
**PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND (B)**
**SCHEDULING A FINAL HEARING ON VALUATION AND USE OF CASH**
**COLLATERAL**

Upon the motion of the Debtor dated March 29, 2024 (i) seeking authority for Debtor's

use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code); (ii) seeking to

provide adequate protection to the named Respondents in the Motion; and (iii) requesting interim

relief pending a final hearing (the "**Final Hearing**") concerning the relief requested in the Motion; it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Motion having come on for preliminary hearing pursuant to 11 U.S.C. § 363(c)(2)(3)  (the "**Preliminary Hearing**") on April 3, 2024; and, on the record of the Preliminary Hearing, the Court finds and determines that: (i) the form of the Motion complies with F.R.B.P. 4001(b)(1); (ii) due and adequate notice of the Motion and Hearing has been given under the circumstances; and (iii) except as provided otherwise below, Debtor's  use of cash collateral in substantial compliance with the budget attached as **Exhibit 1** (the "**Budget**") and otherwise for necessary estate preservation expenses under 11 U.S.C. § 506(c) is necessary to avoid immediate and irreparable harm to the estate pending the Final Hearing; it is accordingly, ORDERED AS FOLLOWS:

1.      <u>Interim Relief Granted</u>. The Motion is granted on an interim basis pending the Final Hearing and the use of Cash Collateral in substantial compliance with the Budget and for necessary estate preservation expenses under 11 U.S.C. § 506(c) is hereby authorized until further order of this Court, subject to the terms and conditions set forth in this Interim Order.

2.      <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized to use Cash Collateral in substantial compliance with the Budget and for necessary estate preservation expenses under 11 U.S.C. § 506(c).

3.      <u>Adequate Protection</u>. Except as noted, the Debtor shall provide the following adequate protection pending the Final Hearing:

a.      <u>Continuation of Pre-Petition Security Agreements</u>. All pre-petition liens of Respondents and any other parties with an interest in Cash Collateral shall, subject to any limitations in the Bankruptcy Code, continue through and including the Final Hearing.

b.      <u>Continued Operation and Maintenance of the Debtor's Business</u>. The Debtor shall continue to operate and maintain its business and properties in accordance with this Interim Order.

c.    <u>Payment of Post-Petition Property Taxes</u>. The Debtor shall pay when due post-petition property taxes with respect to the properties held by Respondents.

d.    <u>Payment of Property Insurance</u>. The Debtor shall maintain property insurance on the properties collateralizing Respondents' secured claims.

4.    <u>Objections Carried to Final Hearing</u>. All objections to the Motion, if any, are carried to the Final Hearing for determination.

5.    <u>Final Hearing</u>.  A Final Hearing on the Motion to Use Cash Collateral **shall be held on the __ day of April, 2024, commencing at the United States Bankruptcy Court, 901 Front Avenue, One Arsenal Place, Columbus, Georgia 31902**. Such Final Hearing shall continue day to day and from time to time until completed.

6.    <u>Service by the Debtor</u>. Within three (3) business days after the entry of this Interim Order, the Debtor shall serve a copy of this Interim Order on all parties specified by F.R.B.P. 4001(b)(1)(C) and any party requesting notice in this case.

**END OF DOCUMENT**

**Prepared and presented by:**


<u>*/s/ David L. Bury, Jr.*</u>
David L. Bury, Jr.
Georgia Bar No. 133066
Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com
Proposed Counsel for the Debtor

**Exhibit 1**

**Interim Cash Collateral Budget**

**(to be attached)**